CASE NO. 24-13467

---

In the United States Court of Appeals
Eleventh Circuit

SPENCER BUENO

*Appellant*

v.

ARHAUS, LLC

*Appellee*

---

**ANSWER BRIEF OF APPELLEE, ARHAUS, LLC**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:23-cv-81290-RLR

---

**COLE, SCOTT & KISSANE, P.A.**
*Counsel for Appellee, Arhaus, LLC*
Cole, Scott & Kissane Building – Suite 1400
9150 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 350-5368
Facsimile: (305) 373-2294
Email: lissette.gonzalez@csklegal.com

Case No.: 24-13467

## **CERTIFICATE OF INTERESTED PERSONS**

1.  Arhaus, LLC, *Defendant-Appellee*

2.  Berkowitz, Mark Jay, *Counsel for Plaintiff-Appellant*

3.  Bueno, Spencer, *Plaintiff-Appellant*

4.  Cole, Scott & Kissane, P.A., *Firm for Defendant-Appellee Arhaus, LLC*

5.  Gonzalez, Lissette, *Appellate Counsel for Defendant-Appellee Arhaus, LLC*

6.  Green, Matthew, *Trial Counsel for Defendant-Appellee Arhaus, LLC*

7.  Harris Yormak, Benjamin, *Former Counsel for Plaintiff-Appellant*

8.  Mark J. Berkowitz, P.A., *Counsel for Plaintiff-Appellant*

9.  Reinhart, The Hon. Bruce E., *U.S. Magistrate Judge*

10. Rosenberg, The Hon. Robin L., *U.S. District Judge*

11. Yormak Employment & Disability Law, *Former Counsel for Plaintiff-Appellant*

**COLE, SCOTT & KISSANE, P.A.**

Case No.: 24-13467

## <u>CORPORATE DISCLOSURE STATEMENT</u>

1.      Appellee, ARHAUS, LLC, is a publicly traded corporation.

2.      Appellee ARHAUS, LLC, is publicly traded on the National Association of Securities Dealers Automated Quotations (Nasdaq) under the symbol "ARHS."

Case No.: 24-13467

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a) and Eleventh Circuit Rules 34-3(c) and 28-1(c), Appellee, ARHAUS, LLC, respectfully submits that oral argument is not warranted in this case, which involves the district court's entry of final summary judgment. Oral argument is not necessary to assist this Court in analyzing Appellee's Motion for Summary Judgment and the district court's findings and detailed and lengthy Order finding summary judgment was necessary and appropriate. The facts and legal arguments have been fully and adequately presented in the parties' briefs and, thus, this Court's decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2); 11th Cir. R. 34-3(b). However, should this Court determine that oral argument is warranted, Appellee respectfully requests that it be scheduled during panel arguments in Miami, Florida.

Case No.: 24-13467

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

CORPORATE DISCLOSURE STATEMENT .......................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................ iii

TABLE OF CONTENTS .......................................................................... iv

TABLE OF CITATIONS ........................................................................... vi

STATEMENT OF JURISDICTION ............................................................1

STATEMENT OF THE ISSUES .................................................................2

STATEMENT OF THE CASE .....................................................................2

   I. BACKGROUND .................................................................................2

   II. THE UNDERLYING ACTION ........................................................7

STANDARD OF REVIEW .........................................................................8

SUMMARY OF ARGUMENT ....................................................................9

ARGUMENT ............................................................................................10

   I.  THE DISTRICT COURT PROPERLY ENTERED FINAL
      SUMMARY JUDGMENT WHERE BUENO COULD NOT
      ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION
      AND WHERE ARHAUS HAD LEGITIMATE, NON-
      DISCRIMINATORY REASONS FOR ITS ACTIONS AND THESE
      WERE NOT A PRETEXT TO MASK UNLAWFUL
      DISCRIMINATION, THUS BUENO COULD NOT PREVAIL ON
      HIS DISCRIMINATION CLAIM. ...................................................10

        A. Bueno could not establish a prima facie case of
        discrimination. .......................................................................12

*i. Bueno did not have a "disability" within the meaning of the ADA.* ...........................................................................13

a. Bueno does not have a physical or mental impairment that substantially limits one or more major life activities. ..................................................................14

b. Bueno does not have a record of such impairment. .............20

c. Bueno was not regarded as having such an impairment. .................................................................23

*ii. Bueno could not establish that he was a "qualified individual" at the time of his termination within the meaning of the ADA.* ...........27

*iii. Bueno could not show that he was terminated or discriminated against because of his alleged disability.* .................31

B. Bueno's employment was terminated for legitimate, non-discriminatory reasons and Arhaus' actions were not pretextual. ..................................................................33

CONCLUSION ........................................................38

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................39

CERTIFICATE OF FILING AND SERVICE..............................................40

COLE, SCOTT & KISSANE, P.A.

Case No.: 24-13467

# <u>TABLE OF CITATIONS</u>

<u>Page</u>

## Cases

*Allen v. GTE Mobile Communications Service Corp.,* 1997 WL 148670
(N.D.Ga.1997)........................................................................................29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................11

*Berjano v. Palm Beach Cty.*, No. 9:17-CV-81122-
ROSENBERG/REINHART, 2018 WL 4955224 (S.D. Fla. Oct. 10, 2018)
........................................................................................34

*Carper v. TWC Servs. Inc.*, 820 F. Supp. 2d 1339 (S.D. Fla. 2011) 20, 21, 23, 24, 25

*Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989)..........................12

*Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000) .................................. 14, 17

*Chapman v. AI Transp.,* 229 F.3d 1012 (11th Cir. 2000) .........................35

*Chockla v. Celebrity Cruise Lines, Inc.*, 47 F. Supp. 2d 1365 (S.D. Fla.
1999) ........................................................................................33

*City of Hollywood v. Hogan*, 986 So. 2d 634 (Fla. 4th DCA 2008) .......................34

*Colwell v. Suffolk Cty. Police Dep't,* 158 F.3d 635 (2d Cir. 1998)..........................16

*Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir. 1997)..............................35

*Cordoba v. Dillard's, Inc*., 419 F.3d 1169 (11th Cir. 2005) ......................................32

*Corning v. LodgeNet Inter. Corp.*, 896 F. Supp. 2d 1138 (M.D. Fla. 2012)............24

*Crockett v. Uniroyal, Inc*., 772 F.2d 1524 (11th Cir. 1985) .......................................8

*Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999).............13

**COLE, SCOTT & KISSANE, P.A.**

*Davis v. Florida Power & Light Co.*, 205 F.3d 1301 (11th Cir. 2000) ...................29

*DeVito v. Chicago Park Dist.*, 270 F.3d 532 (7th Cir. 2001) ....................................29

*Durley v. APAC, Inc.*, 236 F.3d 651 (11th Cir. 2000)...............................................18

*EEOC v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990)............................12

*Ellis v. England*, 432 F.3d 1321 (11th Cir. 2005)......................................................11

*Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466 (11th Cir. 1991) ..........................36

*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254 (7th Cir. 1990) .............10

*Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042 (6th Cir. 1998) ......................30

*Garrett v. University of Alabama at Birmingham Board of Trustees*, 507
     F.3d 1306 (11th Cir. 2007) ...................................................................................17

*Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907 (11th Cir. 1996) .....................16

*Guadamuz v. Entercom Miami LLC*, No. 17- 22617-CIV-Williams, 2019
     WL 1566263 (S.D. Fla. Jan. 29, 2019) ...............................................................15

*Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996)............................................................34

*Hawkins v. Trustees of Indiana Univ.,* 83 F.Supp.2d 987 (S.D.Ind.1999) ...............19

*Hearn v. McNeil,* No. 3:07-CV-1218-J-32MCR, 2010 WL 2243882 (M.D.
     Fla. June 3, 2010)..................................................................................................13

*Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220 (11th Cir. 1999)........... 20, 23

*Holbrook v. City of Alpharetta,* 112 F.3d 1522 (11th Cir. 1997).............................27

*Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917 (11th Cir. 2017)
     ...............................................................................................................................22

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324
     (1977) ....................................................................................................................31

**COLE, SCOTT & KISSANE, P.A.**

Case No.: 24-13467

*Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436 (11th Cir. 1996) ................................................................................................35

*Jackson v. Veterans Admin.,* 22 F.3d 277 (11th Cir. 1994) ......................................29

*Jenks v. Naples Cmty., Hosp., Inc.*, 829 F. Supp. 2d 1235 (M.D. Fla. 2011)...........25

*Kelsey v. University Club of Orlando,* 845 F. Supp. 1526 (M.D. Fla. 1994)...........29

*Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304 (11th Cir. 2012).....................33

*Kvintus v. R.L. Polk & Co.,* 3 F.Supp.2d 788 (E.D.Mich.1998) .............................19

*Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir. 2000)...................................36

*Leisen v. City of Shelbyville,* 968 F. Supp. 409 (S.D.Ind.1997)...............................19

*Mason v. Avaya Comms., Inc.*, 357 F.3d 1114 (10th Cir. 2004)..............................29

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............................................................................................11

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973)........................................ 11, 12

*McIntyre v. Kroger Co.,* 863 F. Supp. 355 (N.D.Tex.1994)....................................22

*Mercantile Bank & Trust Co. v. Fidelity & Deposit Co*., 750 F.2d 838 (11th Cir. 1985) .................................................................................................8

*Militano v. Randstad Professionals US, LP*, No. 14-21285-CIV, 2015 WL 1636115 (S.D. Fla. Apr. 13, 2015).....................................................................13

*Morrison v. Washington County, Ala*., 700 F.2d 678 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)..........................................8

*Nix v. WLCY Radio/Rahall Communications*, 738 F. 2d 1181 (11th Cir. 1984) .................................................................................................34

*O'Neill v. St. Johns River Water Management Dist.*, 341 F.Supp.3d 1292 (M.D. Fla. 2018) ...............................................................................33

*Paleologos v. Rehab Consultants, Inc.*, 990 F. Supp. 1460 (N.D. Ga. 1998) ... 22, 29

*Palmer v. Albertson's,* No. 4:09-cv-00137-SPM-WCS, 2010 WL 785652 (N.D. Fla. March 3, 2010) ..................................................................................20

*Pritchard v. Southern Co. Servs.*, 92 F.3d 1130 (11th Cir. 1996) .................... 13, 31

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ..................................................................................34

*Reis v. Universal City Dev. Partners, Ltd.*, 442 F.Supp.2d 1238 (M.D. Fla. 2006) ...........................................................................................................22

*Richio v. Miami-Dade County*, 163 F. Supp. 2d 1352 (S.D. Fla. June 4, 2001) .................................................................................................... 16, 19

*Rivera v. Orange County School Bd.,* 2000 WL 33176009 (M.D. Fla. May 2, 2000) ..........................................................................................................24

*Robertson v. State*, 829 So. 2d 901 (Fla. 2002) .......................................................13

*Rocky v. Columbia Lawnwood Regional Medical Center,* 54 F.Supp.2d 1159 (S.D.Fla.1999) ...............................................................................................30

*Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996) ......................30

*Schoenfeld v. Babbitt*, 168 F.3d 1257 (11th Cir. 1999) ...........................................12

*Schwertfager v. City of Boynton Bch.,* 42 F. Supp. 2d 1347 (S.D. Fla. 1999) ..................................................................................................... 15, 16

*Selkridge v. United of Omaha Life Ins. Co*., 360 F.3d 155 (3rd Cir. 2004) ..............1

*Smith v. Papp Clinic, P.A.,* 808 F.2d 1449 (11th Cir. 1987) ...................................36

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) .............................................38

*Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318 (11th Cir. 1998) .................... 11, 12

*Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023 (11th Cir. 1994) ..........................36

*Surtain v. Hamlin Terrace Found*, 789 F.3d 1239 (11th Cir. 2015).........................26

*Sutton v. Lader*, 185 F.3d 1203 (11th Cir. 1999)......................................................25

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) .......... 31, 33, 34

*Thomas v. Dolgencorp*, LLC, 645 Fed. App'x 948 (11th Cir. 2016)........................36

*Timberlake v. Carnival Corporation*, No. 18-24250-CIV-COOKE/GOODMAN, 2020 WL 13613272 (S.D. Fla. Jan. 20, 2020) ........ 14, 15

*Trabulsy v. Polk Cmty. College,* No. 8:08-cv-02271-T-33AEP, 2010 WL 1837909 (M.D. Fla. May 3, 2010).........................................................26

*Turner v. Texas Instruments, Inc.,* 55 F.2d 1251 (5th Cir. 1977) ............................37

*Tyndall v. Nat'l Education Centers,* 31 F.3d 209 (4th Cir. 1994).............................29

*Verzeni v. Potter*, 109 F. App'x 485 (3rd Cir. 2004)....................................................30

*Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir. 2001) ............................34

*Washington v. U.P.S., Inc.*, 567 F. App'x 749 (11th Cir. 2014)............................8, 27

*Williams v. Motorola*, Inc., 303 F.3d 1284 (11th Cir. 2002) ....................................30

*Wimberly v. Securities Technology Grp., Inc.*, 866 So. 2d 146 (Fla. 4th DCA 2004) .........................................................................................................17

*Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560 (M.D. Fla. 1995)..............32

## Statutes

28 U.S.C. § 1291 ............................................................................................................1

28 U.S.C. § 1331 ............................................................................................................1

42 U.S.C § 12101 ...........................................................................................................1

42 U.S.C. § 12102 .................................................................................14

42 U.S.C. § 12111 .................................................................................27

42 U.S.C. § 12112 .................................................................................11

42 U.S.C. § 12132 .................................................................................31

**Rules**

29 C.F.R. § 1630.2 ............................................................ 15, 20, 24, 27

Fed. R. Civ. P. 56............................................................................ 10, 40

Case No.: 24-13467

## <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction of the underlying action pursuant to 28 U.S.C. § 1331 as the underlying federal claims arose under 42 U.S.C § 12101, et seq, the Americans with Disabilities Act.

This Court has jurisdiction for appellate review pursuant to 28 U.S.C. § 1291, which provides "[t]he courts of appeals…shall have jurisdiction of appeals from all final decisions of the district courts of the United States…." The district court's September 20, 2024 Order granting final summary judgment in favor of Arhaus and the September 24, 2024 Final Judgment thereon is a final decision. "A final order is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. For purposes of appeal under 28 U.S.C. § 1291, a summary judgment that fully disposes of all claims among all parties is final." *Selkridge v. United of Omaha Life Ins. Co*., 360 F.3d 155, 160 (3rd Cir. 2004).

The current appeal, filed on October 23, 2024, from the district court's Order granting final summary judgment in favor of Arhaus, entered on September 20, 2024, and the September 24, 2024 Final Judgment, was timely filed. (DE 35, 36).

**COLE, SCOTT & KISSANE, P.A.**

Case No.: 24-13467

## <u>STATEMENT OF THE ISSUES</u>

I.     Whether the district court erred in entering final summary judgment where Bueno could not prevail on his discrimination claim as based on the evidence, Bueno would be unable to establish a prima facie case of discrimination and the evidence amply established that Arhaus had legitimate, non-discriminatory reasons for its actions and these were not a pretext to mask unlawful discrimination.

## <u>STATEMENT OF THE CASE</u>

### I.     BACKGROUND

The underlying action arose from Appellant, Sergio Bueno's employment at Arhaus. Arhaus, a furniture retailer, hired Bueno as a Full-Time Design Consultant beginning November 1, 2021. (DE 17 at ¶ 2). Bueno worked at Arhaus's store in Boca Raton and reported to the Store Manager, Anthony McKenna. *Id* at ¶¶ 1, 4. The district court summarized the available evidence as follows:

Bueno suffers from anxiety and depression, which Arhaus did not dispute below. (DE 17 at ¶¶ 6, 7, 17, 40; DE 24 at 6, n.2). However, when Bueno applied for a job at Arhaus, he declined to answer whether he had any disabilities. (DE 17 at ¶ 3). Bueno did not mention his anxiety or depression when he interviewed with store manager, Anthony McKenna. *Id*. However, Bueno claimed that he did discuss having anxiety during his interview with Arhaus's regional manager, Kim Rauen. *Id*. at ¶ 9; DE 23 at ¶ 6. According to Bueno, they discussed possible accommodations,

but Bueno did not tell Rauen that he anticipated missing work because of his depression and anxiety. (DE 23 at ¶¶ 6, 9).

Bueno received a copy of Arhaus's Employee Handbook when he was first hired. (DE 17 at ¶ 10; DE 23 at ¶ 10). The Handbook outlined the company's attendance and leave of absence policies. (DE 17 at ¶ 10; DE 23 at ¶ 10; DE 17-5 at 19, 55). Under "Leaves of Absence," the Handbook states that "[w]ith any Leave of Absence, Arhaus requires the [employee] to maintain regular communication with their manager and Human Resources every two weeks." (DE 17-5 at 19). If an employee is going to miss work, the Handbook requires them to "personally notify [their] supervisor at least one hour in advance of the start of [their] shift." *Id* at 55 (emphasis in original). It warns employees that they "may be terminated at any time for failing to report to work without contacting the Company." *Id*. Shortly after Bueno began work, McKenna specifically instructed Bueno to give advance notice if he was ever going to miss work. (DE 17 at ¶ 14; DE 23 at ¶ 14).

On January 30, 2022, Bueno left work early. (DE 17 at ¶ 15; DE 23 at ¶ 15). According to Bueno, he told McKenna and another store manager, Vera Cohen, before leaving the store. (DE 23 at ¶ 15). However, that afternoon, Bueno texted McKenna saying:

> Sorry I had to bounce. Having some type of cluster headache with anxiety. I'll be taking a professional tomorrow [sic]. I think it's just stress.

(DE 17-6).

The next day, January 31, 2022, Bueno did not report to work, but the parties disputed whether Bueno was scheduled to work that day, with Bueno claiming that he was not scheduled to work and therefore admittedly did not show up. (DE 17 at ¶ 16; DE 23 at ¶ 16). That afternoon, Bueno texted McKenna saying:

> Hey Anthony, I'm going to stay back. I didn't know that the headache thing could be covid stuff.

(DE 17-6). According to Bueno, he sent this text message to inform McKenna that he would not be coming in the following day, February 1, 2022. (DE 23 at ¶ 18).

On February 1, 2022, Bueno did not show up for his scheduled shift at 10:00 A.M. *Id*; DE 17 at ¶ 18. McKenna texted Bueno at 11:44 A.M. to ask if Bueno had gotten a Covid-19 test and asking why Bueno did not call in for his shift that morning. (DE 17-6). Bueno did not respond until 4:24 P.M., at which time he texted McKenna a photograph of a note which read:

> Please excuse Spencer Bueno from work from 1/30/22-2/20/22 due to stress and anxiety. He can return 2/21/22 as long as he is feeling better.

*Id.* This was the only medical documentation Bueno ever provided to Arhaus during his employment. (DE 17 at ¶¶ 17–18; DE 23 at ¶¶ 17–18).

After receiving the February 1, 2022 note, Arhaus placed Bueno on leave and scheduled him to return to work on February 21, 2022 at 10:00 A.M. (DE 17 at ¶ 20; DE 23 at ¶ 20). On February 10, 2022, Arhaus gave Bueno instructions on how to

initiate a short-term disability leave, but Bueno never replied or applied for short-term disability. (DE 17 at ¶ 21; DE 23 at ¶ 21). Bueno also did not communicate with his supervisors or any human resources officers during his leave. (DE 17 at ¶ 22; DE 23 at ¶ 22). He did not ask to extend his leave or provide documentation saying that he could not return to work as scheduled. *Id.*

On February 21, 2022, Bueno did not report to work. (DE 17 at ¶ 25; DE 23 at ¶ 25).  That same day, Bueno was terminated. *Id*. According to Bueno, Arhaus's internal emails showed that his supervisors and human resources decided to terminate him several days before his scheduled return. (DE 23 at ¶ 25; DE 17-8).

 Bueno failed to give any notice whatsoever to Arhaus before failing to report to work on February 21, 2022, never contacted Arhaus whatsoever on February 21, 2022 or any date thereafter, and never asked that his leave be extended for any reason. (DE 17 at Ex. A ¶ 21, Ex. D ¶ 11, Ex. B pp. 88:6-8; 130:24-131:3; 131:21-132:1). Bueno also did not provide Arhaus with any medical documentation or certification, indicating he could not return to work on February 21, 2022. *Id* at Ex. B p. 147:12-16.

The individuals involved in the decision to terminate Bueno's employment were McKenna, Rauen, Frank Barazda, Jr., Arhaus' Director of Human Resources, and Allan Churchmack, Arhaus' Senior Vice President. *Id* at Ex. A ¶¶ 7, 22; Ex. D ¶¶ 6, 12. Bueno's employment was terminated because he left work early on January

30, 2022 without informing management beforehand, failed to report to work on January 31, 2022 and February 1, 2022 (without any notice whatsoever), and finally, failed to report to work on February 21, 2022, after his medical leave concluded (again, without any notice whatsoever and despite being scheduled for work at 10:00 a.m.). *Id* at [Ex. A ¶ 23, [Ex. D ¶ 13.

Prior to February 21, 2022, Arhaus had already begun to consider Bueno's termination based on his failure to report to work on January 31, 2022 and February 1, 2022. *Id* at Ex. A ¶ 24. The ultimate decision, however, was made by Arhaus at 10:38 A.M. on February 21, 2022, after Bueno failed to report to work on his first day back from medical leave. *Id*; Ex. D ¶ 14; Ex. H p. 4. In making the decision to terminate Bueno's employment, Arhaus did not rely on any record of purported impairment, nor was any purported disability discussed or considered as a factor in the decision. *Id* at Ex. A ¶ 25; Ex. B pp. 129:18-130:7; Ex. D ¶ 15.

That same day, McKenna attempted to contact Bueno by phone at 12:30:05 P.M. and 12:30:41 P.M. to no avail. *Id* at Ex. A ¶ 28; Ex. I. At 6:55 P.M., McKenna then terminated Bueno via voicemail, after he did not answer McKenna's third call. *Id*. Prior to this voicemail, Bueno was not informed that his employment was terminated. *Id* at Ex. A ¶ 28; Ex. B p. 132:16-18.

Arhaus sent Bueno a final termination later a few days later, on February 24, 2022, which enclosed a Performance Counseling Record detailing the reasons for

the termination of his employment. *Id* at ¶ 32, Ex. A ¶ 29, Ex. K.; *see also* DE 23 at

¶ 32. As provided in the letter, Arhaus terminated Bueno because of four no-call no-

shows. (DE 17-12 at 2).

## II.    THE UNDERLYING ACTION

Bueno brought the underlying action against Arhaus alleging employment

discrimination under the Americans with Disabilities Act ("ADA"). (DE 8). Bueno

claimed he suffered from a purported disability consisting of mental-emotional

impairments (anxiety and depression). *Id*. at ¶ 10. Bueno alleged he was

discriminated against by Arhaus based on his purported disability and suffered

negative employment action in the form of discipline and termination. *Id*. at ¶ 10.

Based on the foregoing evidence,[1] gathered during discovery, Arhaus filed its

Motion for Summary Judgment, arguing summary judgment was proper as a matter

of law because Bueno's disability discrimination claim failed as a matter of law

where he could not establish a prima facie case of discrimination and where Arhaus

had legitimate, non-discriminatory reason for its actions and these were not a pretext

to mask unlawful discrimination. (DE 16).   In his Response, Bueno argued that

ample evidence supported his claim and that disputed facts meant the case was not

ripe for summary judgment. (DE 23; DE 24).

On September 20, 2024, the district court entered its detailed and lengthy

---

[1] *See supra* Part I.

Order granting summary judgment in favor of Arhaus. (DE 35). The district court found there was sufficient evidence to survive summary judgment on the disability element of the ADA claim, but with respect to whether Bueno was a "qualified individual," it found Bueno failed to point to any evidence from which a jury could find he qualified as a "qualified individual" under the ADA. *Id*. Accordingly, on this basis, it entered summary judgment. *Id*.

The Final Judgment was entered on September 24, 2024. (DE 36). The instant appeal followed.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo by an appellate court. *Morrison v. Washington County, Ala*., 700 F.2d 678, 682 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). When summary judgment is based upon conclusions of law, "those conclusions will be 'subject to the same standard of appellate review as any question of law raised upon appeal,' a plenary review of correctness by [the] court." *Crockett v. Uniroyal, Inc*., 772 F.2d 1524, 1528–29 (11th Cir. 1985) (quoting *Morrison*, 700 F.2d at 682). "When we examine a decision granting or denying summary judgment, we apply the same legal standards that control the district court's determination." *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co*., 750 F.2d 838, 841 (11th Cir. 1985).

Case No.: 24-13467

## SUMMARY OF ARGUMENT

The district court did not err in entering final summary judgment in the underlying action as Bueno's disability discrimination claim failed as a matter of law where he could not establish a prima facie case of discrimination and where Arhaus had legitimate, non-discriminatory reason for its actions and these were not a pretext to mask unlawful discrimination.

As demonstrated by the record evidence and relevant case law, Bueno would be unable to establish a prima facie case of disability discrimination under the ADA because Bueno was not a qualified individual with a disability and was not discriminated against by Arhaus because of any alleged disability. However, even assuming for the sake of argument that Bueno could assert a prima facie case of discrimination, his claim still failed because Arhaus articulated a legitimate, non-discriminatory reason for Bueno's termination – Bueno's employment was terminated by Arhaus because he left work early on January 30, 2022, failed to report to work on January 31 and February 1, 2022, and after a requested medical leave was provided by Arhaus (through February 20, 2022), failed to report to work on his scheduled return date of February 21, 2022. Notably, all three failures to report to work were not accompanied by any prior notice whatsoever by Bueno. Bueno simply could not establish that the legitimate, non-discriminatory reason for his termination identified by Arhaus was in any way pre-textual.

In sum, the record evidence unequivocally established that Bueno was not discriminated against because of any disability and was not terminated (or disciplined) because of any alleged disability. Bueno presented no evidence of discrimination against him based on a purported disability or perceived disability. Therefore, summary judgment was warranted and proper in all respects.

As more fully detailed herein, the district court's September 20, 2024, Order granting summary judgment and the September 24, 2024, Final Judgment should be affirmed in all respects.

## **ARGUMENT**

### **I. THE DISTRICT COURT PROPERLY ENTERED FINAL SUMMARY JUDGMENT WHERE BUENO COULD NOT ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION AND WHERE ARHAUS HAD LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ITS ACTIONS AND THESE WERE NOT A PRETEXT TO MASK UNLAWFUL DISCRIMINATION, THUS BUENO COULD NOT PREVAIL ON HIS DISCRIMINATION CLAIM.**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, it is not required that the moving party negate the opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254 (7th Cir. 1990). "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

Case No.: 24-13467

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 48 (1986) (emphasis in original). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. Moreover, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discipline of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Generally, disability discrimination cases may be proven through one of three generally accepted methods: by direct evidence of discriminatory intent; by circumstantial evidence using the framework set out for Title VII cases in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); or by statistical proof. *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318 (11th Cir. 1998).

"Direct evidence is composed of 'only the most blatant remarks, whose intent

**COLE, SCOTT & KISSANE, P.A.**

could be nothing more than to discriminate on the basis of some impermissible factor.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). "[R]emarks made by non-decision makers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330 (citing *EEOC v. Alton Packaging Corp*., 901 F.2d 920, 924 (11th Cir. 1990)). Here, Bueno pointed to no direct evidence of discrimination based on a purported disability.

Instead, all of Bueno's allegations required inferences and presumptions of discriminatory animus. Bueno, therefore, had to rely on circumstantial evidence, and when evaluating disability discrimination claims based on circumstantial evidence, the following burden-shifting analysis is employed: (1) the claimant must establish a prima facie case of discrimination; (2) the employer must respond with a legitimate, non-discriminatory reason for its actions; and (3) the claimant must establish that the employer's articulated reason was a pretext to mask unlawful discrimination, in order to prevail in his discrimination claim. *McDonnell Douglas*, 411 U.S. 802-804.

### A.   Bueno could not establish a prima facie case of discrimination.

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he: (1) has a "disability;" (2) is a "qualified individual" who can perform the essential functions of the job in question with or

Case No.: 24-13467

without reasonable accommodations; and (3) was discriminated against because of his disability. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996). Here, Bueno could not establish a prima facie case of disability discrimination because he did not have a "disability" as defined by the ADA and Bueno was not a qualified individual with a disability and was not discriminated against by Arhaus because of any alleged disability.

### i. *Bueno did not have a "disability" within the meaning of the ADA.[2]*

To claim protection of the ADA, a plaintiff must first establish the existence of a disability. *See Militano v. Randstad Professionals US, LP*, No. 14-21285-CIV, 2015 WL 1636115, at *17 (S.D. Fla. Apr. 13, 2015) (noting that the threshold to an ADA claim is establishing the existence of a disability within the meaning of the ADA). Under the ADA, a "disability" is defined as "a physical or mental impairment

---

[2] Although the district court found below that there was sufficient evidence to survive summary judgment on the disability element of Bueno's ADA claim, Arhaus addresses this issue nonetheless as this could properly form an additional basis for affirming the entry of summary judgment, given the *de novo* standard of review and pursuant to the tipsy coachman doctrine, which "allows an appellate court to affirm a trial court that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record.'" *Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) (citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644–45 (Fla. 1999)); *see also Hearn v. McNeil,* No. 3:07-CV-1218-J-32MCR, 2010 WL 2243882, at *3 (M.D. Fla. June 3, 2010) (applying the doctrine in the federal context). To preserve the order of the prima facie elements of disability discrimination under the ADA, Arhaus has placed this argument first, although not the principal argument given the district court's ruling below.

that *substantially limits* one or more major life activities . . . a record of such an impairment . . . or [] being regarding as having such an impairment." 42 U.S.C. § 12102(1).

Bueno, who was only employed by Arhaus from November 1, 2021 to February 21, 2022 as a Full-Time Design Consultant, could not prove he has a protected disability under any of these alternatives. Specifically, in his Amended Complaint, Bueno made a general allegation that his purported disability "consists of mental-emotional impairments (anxiety and depression) which affects the major life activities of thinking and working." [ECF No. 8 at ¶ 10]. However, there is no evidence to show that Bueno's anxiety or depression qualified as a disability under the ADA.

> **a.    Bueno does not have a physical or mental impairment that substantially limits one or more major life activities.**

"[M]erely having a mental impairment does not render an individual 'disabled' under the ADA." *Timberlake v. Carnival Corporation*, No. 18-24250-CIV- COOKE/GOODMAN, 2020 WL 13613272, at *4 (S.D. Fla. Jan. 20, 2020). Rather, that impairment must "*substantially limit[]* one or more major life activities." 42 U.S.C. § 12102(1). An impairment that does not substantially limit a major life activity does not warrant ADA protection. *Cash v. Smith*, 231 F.3d 1301, 1306 n.5 (11th Cir. 2000).

The determination of whether a mood disorder substantially limits one or

more major life activities must be made on a case-by-case basis and "does not follow from [a] plaintiff's diagnosis [] alone." *Timberlake*, 2020 WL 13613272 at *4. A "substantial limitation" is a limitation which prevents a person from performing a particular major life activity that the average person can perform, or which significantly restricts the manner, duration and condition under which the average person can perform the activity. *See* 29 C.F.R. § 1630.2(j). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *See* 29 C.F.R. § 1630.2(i). Whether a claimed impairment constitutes a disability under the ADA and whether an identified endeavor constitutes a "major life activity" are questions of law for the Court to decide. *See Schwertfager v. City of Boynton Bch.,* 42 F. Supp. 2d 1347 (S.D. Fla. 1999).

Thus, while both anxiety and depression can constitute a disability for ADA purposes, a plaintiff "must show that [the] anxiety or depression (or both) substantially limited one or more of [his] major life activities"— Bueno did not establish that here and, in fact, could not. *Guadamuz v. Entercom Miami LLC*, No. 17- 22617-CIV-Williams, 2019 WL 1566263 at *4 (S.D. Fla. Jan. 29, 2019). "In determining whether a disability substantially limits a major life activity requires considering: '(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or

the expected permanent or long-term impact of or resulting from the impairment."' *Schwertfager,* 42 F. Supp. 2d at 1358-59 (quoting *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d at 907, 911 (11th Cir. 1996)). Bueno did not satisfy his evidentiary burden here and, thus, his claim properly failed. *See also Richio v. Miami-Dade County*, 163 F. Supp. 2d 1352, 1362 (S.D. Fla. June 4, 2001) (granting employer summary judgment, finding that three letters from depressed employee's psychotherapist asking employer to excuse employee from work due to emotional problems did not establish disability); *Colwell v. Suffolk Cty. Police Dep't,* 158 F.3d 635, 641 (2d Cir. 1998) (noting that a plaintiff that shows he "had an impairment and the impairment affected a major life activity would nonetheless be ineligible if the limitation of the major life activity was not substantial.").

Bueno's claims that he was substantially limited in the major life activity of working or thinking as a result of his claimed disability was contradicted by his own testimony, wherein he stated that he could perform all functions of his job despite any alleged stress, anxiety, or depression, he was "[d]efinitely up to the task of handling anything that came [his] way," his alleged disabilities never required him to miss work (before and after his employment with Arhaus), and he was able to satisfy all of his job responsibilities and duties despite his purported disability. (DE 17 at ¶ 40). Bueno also testified his alleged disability did not impact him in any way whatsoever in many areas, "at times" in others, and a *handful* of times in other areas

during his employment with Arhaus. *Id.* at ¶ 39. *See Garrett v. University of Alabama at Birmingham Board of Trustees*, 507 F.3d 1306, 1315 (11th Cir. 2007) ("A severe limitation that is short term and temporary is not evidence of a disability."); *Cash*, 231 F.3d at 1306 (affirming grant of summary judgment against ADA plaintiff who suffered from seizures, diabetes, migraines, and depression because, though her ailments "have an adverse impact on [plaintiff's] life, there is no evidence that they have limited her in a major life activity."); *see also Wimberly v. Securities Technology Grp., Inc.*, 866 So. 2d 146, 147 (Fla. 4th DCA 2004) (holding "a "disabled" person must be completely unable to perform the activity, or significantly restricted in performing the activity as compared to an average person").

Moreover, when Bueno was twice interviewed by Arhaus, Bueno did not describe or discuss the severity of symptoms of any claimed disability and did not discuss any restrictions or limitations that his purported disability could have on his ability to perform work for Arhaus. (DE 17 at ¶¶ 5, 9). Specifically, during his interview with Anthony McKenna, Bueno did not indicate or represent that he had any alleged anxiety, depression, or disability. *Id* at ¶ 5. And, during his interview with Kim Rauen, Bueno claimed that he informed Rauen of a purported disability, however, he testified that he did not mention that he anticipated missing any work because of his purported disability, did not mention anything about his purported disability impacting his ability to perform work, and did not mention anything about

purported depression. *Id* at ¶ 9.

Additionally, Bueno testified he had never been placed on work restrictions because of his claimed disability. *Id* at ¶ 41. There was also no evidence that Bueno was unable to perform his day-to-day job responsibilities for Arhaus despite any alleged disability, Bueno testified that he would have been able to perform his job for Arhaus if he had returned to work and had not been terminated, and Bueno also testified that his purported anxiety would have improved if he had not been terminated. *Id*. Arhaus also never denied any request for time off or to leave work early by Bueno based on any claimed medical issue. *Id* at ¶ 13.

In *Durley v. APAC, Inc.*, 236 F.3d 651 (11th Cir. 2000), the plaintiff argued she was limited in the major life activity of working because of her purported disability – the plaintiff claimed the symptoms of her medical condition (chronic fatigue syndrome) were aggravated by stress, which included migraines, high blood pressure, and fever. "[T]ime off was never refused but [the plaintiff] felt her symptoms were aggravated by workplace induced stress." *Id*. at 655. This Court found that the plaintiff's own testimony "defeat[ed] her claim," as she testified that "even when her condition was allegedly being aggravated by work-related stress, she 'was able to perform the job . . . The work got done always.'" *Id*. at 657 (internal citation omitted). Accordingly, this Court concluded that the "district judge properly found that Durley was not disabled within the meaning of the statute at the time of

Case No.: 24-13467

the alleged failure to promote, and summary judgment on the ADA claim was appropriate." *Id*.

Similarly, here, even if Bueno did suffer from depression and/or anxiety which could be regarded as an impairment, the same did not qualify as a disability under the ADA given the record evidence. *See also Richio*, 163 F. Supp. 2d 1352, 1361-64 (finding, where plaintiff claimed "in a conclusory fashion that her depression limited her in the major life activity of working," that three letters from psychotherapist, all of which requested she be excused from work for "emotional problems," provided little insight into what ailments actually plagued the plaintiff and failed to identify any symptoms of the plaintiff's depression that limited her from working and, ultimately, no reasonable juror could find these letters were sufficient to show she was suffering from a disability that impaired her working); *Hawkins v. Trustees of Indiana Univ.,* 83 F.Supp.2d 987, 994 (S.D.Ind.1999) (finding plaintiff could not establish a *prima facie* case of disability discrimination under ADA on a conclusory allegation of mental impairment); *Kvintus v. R.L. Polk & Co.,* 3 F.Supp.2d 788 (E.D.Mich.1998) (noting plaintiff's conclusory allegations concerning his depression and post- Vietnam stress disorder did not constitute sufficient evidence to survive summary judgment); *Leisen v. City of Shelbyville,* 968 F. Supp. 409 (S.D.Ind.1997) (granting summary judgment because plaintiff suffering from depression was not disabled; depression did not limit a major life activity).

### b.    Bueno does not have a record of such impairment.

Having a "record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). This "record-of-impairment standard is satisfied only if [the plaintiff] actually suffered a [mental] impairment that *substantially limited one or more of her major life activities*." *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) (emphasis supplied). Because Bueno did not (and could not) establish his claim that his alleged disability was a substantial limitation in one or more of his major life activities, the "record of impairment" claim also proper failed. *See Carper v. TWC Servs. Inc.*, 820 F. Supp. 2d 1339, 1354 (S.D. Fla. 2011); *Palmer v. Albertson's,* No. 4:09-cv-00137-SPM-WCS, 2010 WL 785652, *5 (N.D. Fla. March 3, 2010) (granting summary judgment in favor of employer on employee's disability discrimination claim and noting that "the record of impairment definition . . . requires an individual to have actually suffered an impairment that substantially limited one or more of the individual's major life activities" and since plaintiff's impairment was already found not to have been substantially limiting with respect to plaintiff's major life activities, plaintiff was precluded from relying on the "record of impairment" definition to establish his claimed disability under the Act).

Additionally, notwithstanding that medical records alone do not create a

record of a disability, Arhaus was never in possession of any medical records of Bueno, let alone any medical record or documentation that set forth any medical diagnosis, referenced any disability, mentioned anything about the circumstances of any stress or anxiety, placed Bueno on any work restrictions or limitations, or explained how any claimed stress or anxiety substantially limited Bueno in any way. (DE 17 at ¶¶ 7, 27). Therefore, Arhaus could not have possibly relied on any such record of Bueno's alleged impairment in making its decision to terminate Bueno and on this basis as well summary judgment was also proper. *See Carper*, 820 F.Supp.2d at 1354.

To be sure, the only document Bueno provided to Arhaus regarding his leave was a text message screenshot of a note dated February 1, 2022, requesting that he be excused from work "due to stress and anxiety." (DE 17 at ¶ 18). This note, signed by a physician's assistant (not a medical doctor), included a return-to-work date, did not set forth any medical diagnosis, did not reference any disability, did not mention anything about the circumstances of any stress or anxiety, did not place Bueno on any restrictions or limitations for any return to work, and did not explain how Bueno's "stress and anxiety" substantially limited any of his major life activities. *Id. at* ¶ 19. Notably, the February 1, 2022 note did not even mention depression, and Bueno did not provide any evidence that he ever informed Arhaus of any alleged depression. *Id* at ¶¶ 6, 9, 17, 19. This was therefore insufficient to establish anything

relating to Bueno's alleged disability. *See Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 921 (11th Cir. 2017) (holding that summary judgment for an employer defendant was appropriate because "[a]bsent further evidence, [a] letter [from a chiropractor] could not establish [plaintiff]'s disability because it did not explain how [plaintiff]'s back pain substantially limited any of her major life activities"); *Reis v. Universal City Dev. Partners, Ltd.*, 442 F.Supp.2d 1238, 1248-49 (M.D. Fla. 2006) (holding that evidence of discussion with a supervisor regarding a health condition, submission of various doctors' notes to a former supervisor, hospitalization, and the occurrence of several telephone calls reporting her hospitalization was insufficient to show a "record of" disability because the plaintiff failed to demonstrate that her impairment substantially limited a major life activity); *Paleologos v. Rehab Consultants, Inc.*, 990 F. Supp. 1460, 1465 (N.D. Ga. 1998) (concluding that the plaintiff's job-induced stress did not constitute a disability under the ADA and finding "[t]his Court will not *assume* that plaintiff is disabled under the ADA because she 'suffered from stress, anxiety and depression'") (emphasis in original); *McIntyre v. Kroger Co.,* 863 F. Supp. 355 (N.D.Tex.1994) (finding letter from doctor typed on letterhead of psychiatric hospital requesting the plaintiff be transferred for a "health disorder" was insufficient as a matter of law to put defendant on notice that plaintiff had a covered disability).

Based on the text message screenshot of the February 1, 2022 note, Bueno

was placed on the requested leave of absence by Arhaus through February 20, 2022.

(DE 17 at ¶ 20). Bueno never requested that his medical leave be extended because,

as he testified, he was "ready to return back to work." *Id* at ¶¶ 22-23. Bueno also did

not provide Arhaus with any medical documentation or certification indicating he

could not return to work on February 21, 2022. *Id* at ¶ 23. It is also worth noting that

while Bueno was out on leave, on February 10, 2022, Arhaus provided him with

instructions on how to initiate a Short-Term Disability Leave, given Bueno was on

leave because of a medical excuse, but Bueno never responded to Arhaus and did

not make any claim for short term disability. *Id* at ¶ 21. As the Southern District held

in *Carper*, wherein the plaintiff's "record of impairment" claim failed, "to succeed

on a 'record of impairment' theory, it is necessary to provide that the 'record relied

on by an employer indicates that the individual has or has had a substantially limiting

impairment.'" 820 F.Supp.2d at 1354 (quoting *Hilburn*, 181 F.3d at 1229). This did

not exist here.

### c.    Bueno was not regarded as having such an impairment.

Being "regarded as having such an impairment" means a plaintiff must: (1)

have a physical or mental impairment that does not substantially limit major life

activities but is treated by a covered entity as constituting such limitation; (2) have

a physical or mental impairment that substantially limits major life activities only as

a result of the attitudes of others toward such impairment; or (3) have none of the

Case No.: 24-13467

impairments defined in (1) or (2) but is treated by a covered entity as having a substantially limiting impairment. 29 C.F.R. § 1630.2(1). "The focus of the inquiry is on how the decisionmakers perceived the plaintiff and whether their perception was a motivating factor in the employment decision." *Rivera v. Orange County School Bd.,* 2000 WL 33176009, *6–8 (M.D. Fla. May 2, 2000). "In order to overcome summary judgment on a 'regarded as' theory of disability, a plaintiff must produce sufficient evidence for a reasonable trier of fact to conclude that a defendant perceived him, however erroneously, as having an impairment that substantially limited one or more of his major life activities." *Carper*, 820 F. Supp. 2d at 1355; *see also Corning v. LodgeNet Inter. Corp.*, 896 F. Supp. 2d 1138, 1149 (M.D. Fla. 2012) ("To establish that the District 'regarded' O'Neill as disabled, O'Neill must show that the District 'perceived him as being substantially limited in a major life activity, regardless of whether he had an actual impairment or not.'").

Here, Arhaus never regarded or perceived Bueno as disabled or substantially limited in any major activity, and Bueno's purported disability was not discussed or considered as a factor in the decision to terminate his employment. To be sure, there was not a scintilla of evidence establishing the contrary. *Id* at ¶¶ 6, 27, 38. Rather, the evidence showed that McKenna, Bueno's direct supervisor, was never aware that Bueno claimed to suffer or did suffer from any alleged disability, nor did he perceive or regard Bueno as being disabled. *Id* at ¶ 6. In fact, the evidence showed that Bueno

Case No.: 24-13467

never mentioned any type of depression to McKenna whatsoever. Id. It is also worth noting that during the application process for employment with Arhaus, Bueno declined to answer whether he had any disability. *Id* at ¶ 3.

Below, Bueno relied solely on Arhaus' alleged knowledge of his purported anxiety and the accommodations it extended to him, "[b]ut the law is clear that the mere fact that an employer is aware of an employee's impairment and offers accommodation is insufficient to demonstrate either that the employer regarded the employee as disabled or that said perception caused the adverse employment action. *Carper*, 820 F. Supp. 2d at 1355 (citing *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999) ("The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled")). *See also Jenks v. Naples Cmty., Hosp., Inc.*, 829 F. Supp. 2d 1235, 1254 (M.D. Fla. 2011) (granting summary judgment in favor of employer on a disability discrimination claim where plaintiff failed to provide any evidence that defendants believed she was substantially limited in a major life activity and holding "[t]he mere fact that an employer is aware of an impairment is not sufficient to show that the employer regarded the employee as disabled or that the perception cause an adverse action."). In fact, this Court has recognized that even where a defendant employer knew the plaintiff visited a doctor and received a "conclusory doctor's excuse," it is still insufficient to establish that the defendant employer regarded the plaintiff as

disabled. *Surtain v. Hamlin Terrace Found*, 789 F.3d 1239, 1246-47 (11th Cir. 2015).

Here, the evidence unequivocally established that Arhaus did not perceive or regard Bueno as disabled or substantially limited in anyway whatsoever, and that Bueno was permitted to return to work without restriction. (DE 17 at ¶¶ 6, 19, 38). Additionally, Bueno himself testified that he never made any request to change his work conditions or schedules because of a claimed disability. *Id* at ¶ 41. Bueno simply claimed that he complained of headaches, stress, and anxiety to Arhaus on a few occasions. And while this was disputed, even if that had been the case, such purported complaints cannot be sufficient to put any employer on notice of a substantially limiting impairment as the ADA defines. As Arhaus noted below, if that were the case, any time an employee complained of a headache, being stressed, or any sickness whatsoever and had to leave work or not report to work because of the same, a defendant employer would be considered to be on notice of a qualified "disability," which is not what the Act intended. *See, e.g., Surtain*, 789 F.3d at 1246-47 (affirming summary judgment for an employer defendant because evidence that plaintiff's supervisor knew she had gone to a doctor for health issues was insufficient to show that the employer "believed her to be suffering from a disability—not just any medical condition, but one that substantially limited a major life activity"); *Trabulsy v. Polk Cmty. College,* No. 8:08-cv-02271-T-33AEP, 2010 WL 1837909, at *3 (M.D. Fla. May 3, 2010) (holding the "mere fact that an employer knows a person

has medical problems does not mean that the employee is regarded as having an impairment").

Accordingly, in the absence of any evidence that Bueno was regarded as having a substantially limiting disability by Arhaus, his ADA properly failed. *See Washington v. U.P.S., Inc.*, 567 F. App'x 749, 753-54 (11th Cir. 2014) (affirming summary judgment on disability discrimination claim where plaintiff failed to present evidence that her employer perceived her as being disabled).

### ii. Bueno could not establish that he was a "qualified individual" at the time of his termination within the meaning of the ADA.

The ADA defines "qualified individual" as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994); 29 C.F.R. § 1630.2(m). In determining which functions of a job are deemed essential, the ADA allows for consideration of the employer's judgment. *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir. 1997).

Here, the evidence showed that Bueno was terminated solely because he left work early on January 30, 2022 without informing management beforehand, failed to report to work on January 31, 2022 and February 1, 2022 (without any notice whatsoever), and failed to report to work on February 21, 2022, after his medical leave concluded on February 20, 2022 (again, without any notice whatsoever and despite being scheduled for work at 10:00 a.m.). (DE 17 at ¶¶ 15, 16, 18, 23, 25).

Bueno's failure to notify Arhaus that he would not be returning to work on February 21, 2022 was another instance in a pattern of unacceptable behavior Bueno had exhibited prior to taking any leave. *Id* at ¶ 29. Bueno's failure to return to work on February 21, 2022, as well as the lack of any notice, was the final of many incidents ultimately resulting in his termination. *Id. See also* ¶¶ 24, 26, 33.

At the commencement of his employment, Bueno received Arhaus' employee handbook, and he testified that he read the same. *Id* at ¶ 10. Within its employee handbook, Arhaus sets forth attendance, leave of absence, and return to work policies for its employees. *Id*. Specifically, Arhaus requires any employee to "maintain regular communication with their manager and Human Resources every two weeks during a Leave of Absence"— Bueno did not do this. *Id*. Arhaus also makes clear that "[f]ailure to report to work as scheduled following a leave of absence can result in termination of employment." *Id*. Moreover, Arhaus' employee handbook expressly provides that absenteeism is disruptive to its operations, notes that chronic absenteeism can result in termination of employment, demands notification be provided to a supervisor at least one hour in advance of the start of a shift if the employee is to be absent, and states "[a]lthough you may be terminated at any time for failing to report to work without contacting the Company, should you not report to work for two (2) consecutive days or work shifts without notification, we will consider this your voluntary resignation. *Id*.

Case No.: 24-13467

Bueno's inability to attend work on a regular basis rendered him unqualified for the position as a Full-Time Design Consultant with Arhaus. *Id*. Indeed, "the most essential function of any job, and a prerequisite to the performance of other essential functions, is attendance at work, for an employee who is absent can perform no function, essential or non-essential." *Paleologos v. Rehab Consultants, Inc.*, 990 F. Supp. at 1467 (citing to *Allen v. GTE Mobile Communications Service Corp.,* 1997 WL 148670 *1 (N.D.Ga.1997) (finding plaintiff's possession of requisite skill and experience irrelevant where panic attacks rendered her unable to perform "what is perhaps the most essential function of most jobs: attendance at work"); *see also Tyndall v. Nat'l Education Centers,* 31 F.3d 209, 210 (4th Cir. 1994) (holding that plaintiff's inability to meet attendance requirement precluded an ADA claim); *Kelsey v. University Club of Orlando,* 845 F. Supp. 1526 (M.D. Fla. 1994) (stress-induced "meltdowns" which caused inability to work necessary hours justified termination); *Jackson v. Veterans Admin.,* 22 F.3d 277, 278-279 (11th Cir. 1994) (regular and predictable attendance is an essential function of many jobs); *Mason v. Avaya Comms., Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) (holding "physical attendance in the workplace is itself an essential function of most jobs."); *DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001) (holding "regular attendance is an essential requirement of a job."); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1306 (11th Cir. 2000) (explaining that "job presence" is an essential function); *Gantt v.*

**COLE, SCOTT & KISSANE, P.A.**

*Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("Because [the plaintiff] could not attend work, he [was] not a 'qualified individual with a disability' under the ADA.").

In addition to the foregoing, it was also clear from Bueno's own testimony that he was not able to handle the reasonably necessary stress of employment as a Full-Time Design Consultant with Arhaus. Specifically, Bueno testified he left work early on January 18, 2022 because of stress, asked to leave work during times of stress, left work early on January 30, 2022 because he was "feeling overwhelmed and stressed," and needed to take breaks because of stress. (DE at ¶ 34). As this Court had held, an "employee's ability to handle reasonable necessary stress . . . [is an] essential function[] of any position." *Williams v. Motorola*, Inc., 303 F.3d 1284, 1290 (11th Cir. 2002); *see also Verzeni v. Potter*, 109 F. App'x 485, 488 (3rd Cir. 2004) (noting ability to handle stress is an essential function).

Given Bueno's inability to regularly report to work, failure to return to work after his leave, and inability to handle reasonably necessary stress, he was not a "qualified individual" within the meaning of the ADA and on this basis as well his claim failed. *See Rocky v. Columbia Lawnwood Regional Medical Center*, 54 F.Supp.2d 1159, 1166 (S.D.Fla.1999) (holding "if the nature of an employee's

Case No.: 24-13467

position requires her to regularly and reliably attend work, and she fails to meet that requirement, then she is not qualified for her job.").

### iii. Bueno could not show that he was terminated or discriminated against because of his alleged disability.

Bueno also did not, and could not, show that he was subjected to termination or any discrimination whatsoever because of his claimed disability. *Pritchard*, 92 F.3d at 1134 (citing 42 U.S.C. § 12132).

Intent is the touchstone of any discrimination case—indeed, a crucial ingredient in all actions alleging discriminatory treatment by an employer based on conduct proscribed by the ADA is proof of discriminatory motive. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 325 n. 5 (1977). In establishing unlawful motive, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, the record evidence established unequivocally that Arhaus did not discriminate against Bueno based on any alleged disability. The evidence also clearly established that Arhaus had no discriminatory motive in its decision to terminate Bueno's employment. To be sure, the evidence showed that Arhaus never disciplined Bueno in any manner whatsoever, let alone based on a purported disability. (DE at ¶ 37). The evidence also showed that Bueno never made any type of complaint to

management or Human Resources regarding alleged discrimination (including any alleged disability discrimination) and testified that he did not intend to make any complaint about discrimination (including any alleged disability discrimination). *Id* at ¶ 11.

To the contrary, Bueno produced no evidence of anyone who purportedly discriminated against him on the basis of a disability, of any discriminatory comment or statement made to him on the basis of a disability, or of any action taken against him on the basis of a disability. Bueno also did not present any evidence to rebut or contradict the record evidence demonstrating that Bueno's purported disability was not even discussed or considered as a factor in the decision to terminate his employment. (DE at ¶ 27). "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005); *see also Woodbury v. Sears, Roebuck & Co*., 901 F. Supp. 1560, 1565 (M.D. Fla. 1995) (holding plaintiff's subjective opinion that the employer's action was discriminatory, without supportive evidence, was not sufficient to establish claim of discrimination).

It is also worth noting that during his deposition, Bueno testified to his belief (albeit mistaken) that Arhaus' financial distress was an additional reason for his termination. (DE 17 at ¶ 35). Moreover, after his termination, Bueno filed a whistleblower complaint with the Securities and Exchange Commission against

Arhaus, wherein he claimed that he was retaliated against and terminated for reporting insider trading – nowhere in this whistleblower complaint is termination based on disability mentioned or referenced. *Id*. *See O'Neill v. St. Johns River Water Management Dist.*, 341 F.Supp.3d 1292 at 1302 (M.D. Fla. 2018) (finding plaintiff could not demonstrate his disability was a cause of his termination and highlighting that plaintiff's whistleblower complaint made no reference to any disability).

Accordingly, Bueno failed to sustain his burden of establishing that he was discriminated against or terminated because of any alleged disability. *See Chockla v. Celebrity Cruise Lines, Inc.*, 47 F. Supp. 2d 1365, 1370 (S.D. Fla. 1999) (granting summary judgment to employer where plaintiff failed to establish that that any adverse employment action was the result of her disability).

### B. Bueno's employment was terminated for legitimate, non-discriminatory reasons and Arhaus' actions were not pretextual.

Even assuming for the sake of argument that Bueno had established a prima facie case of discrimination – which, based on all of the foregoing, it is clear he did not and could not – Arhaus was still entitled to summary judgment as it unequivocally established a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 252-53.

An employer's burden is merely one of production, not persuasion. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d

105 (2000)); *see also Berjano v. Palm Beach Cty.*, No. 9:17-CV-81122-ROSENBERG/REINHART, 2018 WL 4955224, at *3 (S.D. Fla. Oct. 10, 2018) (noting that the intermediate burden is "exceedingly light"). An employer's burden is met where it "raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. Indeed, an employer may even fire an employee for a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory or retaliatory reason. *Nix v. WLCY Radio/Rahall Communications*, 738 F. 2d 1181, 1187 (11th Cir. 1984). *See also Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996) (holding it is important to note the employer need not prove a non-discriminatory reason for discharging an employee but need merely articulate a valid rationale); *City of Hollywood v. Hogan*, 986 So. 2d 634 (Fla. 4th DCA 2008) (employer may fire employee for good reason, bad reason, reason based on erroneous facts, or for no reason at all, as long as action is not for discriminatory reason).

Here, as detailed at length above, the record evidence amply established why Bueno was terminated, and it was for a legitimate, non-discriminatory reason. *See supra* Part I.A. Once Arhaus satisfied this burden, it then became Bueno's burden to come forward with evidence indicating that Arhaus' proffered reason was merely a pretext, which he wholly failed to do *Burdine*, 450 U.S. at 253-55; *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).

In conducting the pretext inquiry, the analysis involves whether a plaintiff has demonstrated "such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation omitted). A plaintiff may not show pretext by recasting an employer's proffered nondiscriminatory reasons or by substituting his business judgment for that of the employer. *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000). Indeed, if the proffered reason is one that might motivate a reasonable employer, the plaintiff must meet the proffered reason "head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Combs*, 106 F.3d at 1530.

As this Court has noted, mere allegations are insufficient to show that a defendant's explanation is a pretext for discrimination. *See generally, Isenbergh v. Knight-Ridder Newspaper Sales, Inc*., 97 F.3d 436, 443-44 (11th Cir. 1996) ("[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions");

Case No.: 24-13467

*Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (stating that the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value."); *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1026 (11th Cir. 1994) (a discharged employee's mere suspicion of discrimination, unsupported by personal knowledge of discrimination, will not constitute pretext).

Here, Bueno offered no evidence to show that Arhaus' justification for his termination was unworthy of credence. Certainly, the reason for Arhaus' termination of Bueno's employment was well-documented, and Arhaus reasonably believed, in good faith, that Bueno failed to report to work on multiple occasions, failed to provide the required notice of absences, and failed to satisfy required attendance and dependability standards. (DE 17 at ¶ 33). In *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991), this Court noted that the relevant inquiry is not whether the employee actually engaged in the misconduct, but whether the employer believed the employee had done wrong, and if so, whether this belief was a reason behind the employee's discharge. "An employer is entitled to rely on a good faith belief that an employee has committed professional misconduct and does not need to prove that belief was correct." *Thomas v. Dolgencorp*, LLC, 645 Fed. App'x 948, 951 (11th Cir. 2016); *see also Smith v. Papp Clinic, P.A.,* 808 F.2d 1449, 1452-53 (11th Cir. 1987) (explaining that "if the employer fired an employee because it

honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not [discriminatory]") (internal marks and citations omitted); *Turner v. Texas Instruments, Inc.,* 55 F.2d 1251, 1256 (5th Cir. 1977) (stating "[e]ven if [the employer] wrongly believed that [an employee] violated [its] policy, if [the employer] acted on this belief it was not guilty of [ ] discrimination").

Moreover, there is no evidence that Bueno's termination was motivated by discriminatory animus on the basis of any alleged disability. Bueno did not produce any evidence that he was fired because of any disability discrimination. Rather, quite the opposite. The record evidence clearly established that Bueno did not suffer from a qualified disability, was not substantially impaired in any major life activity, was not perceived as disabled by Arhaus, was not discriminated against on the basis of any disability, and was not terminated because of any alleged disability. Thus, the evidence amply showed that Bueno was terminated for reasons entirely unrelated to any claimed disability and Bueno did not, and in fact could not, offer any evidence that disability discrimination was the basis for his termination. There was no evidence to rebut Arhaus' legitimate business reason for its actions, there were no discriminatory comments or stray remarks sounding in disability discrimination, and Bueno could not prove that Arhaus' stated reasons were false and that disability discrimination was the real reason for Arhaus' actions. *St. Mary's Honor Ctr. v.*

Case No.: 24-13467

*Hicks*, 509 U.S. 502, 515-16 (1993).

## **CONCLUSION**

In sum, the record evidence established that Bueno did not suffer from a qualified disability, was not substantially impaired in any major life activity, was not perceived as disabled by Arhaus, was not discriminated against because of any disability, and was not terminated because of any alleged disability. Bueno presented no evidence of discrimination against him based on a purported disability or perceived disability. Based on the record evidence – and most notably, Bueno's own testimony – there was no genuine issue of material fact as to the complete absence of any disability discrimination. Moreover, Arhaus proffered a legitimate, non-discriminatory reason for Bueno's termination, which was not pretextual. Accordingly, Bueno could not establish his disability discrimination claim and summary judgment was therefore warranted and proper as a matter of law.

Based on all of the foregoing arguments and legal authorities, Appellee, ARHAUS, LLC, respectfully requests that this Court affirm in all respects the district court's September 20, 2024, Order granting summary judgment and the September 24, 2024 Final Judgment thereon.

Case No.: 24-13467

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32 (a)(7)(B) because this brief contains 9,443 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman font, size 14.

By: <u>*/s/ Lissette Gonzalez*</u>
LISSETTE GONZALEZ
FBN: 99779
*Counsel for Appellee*

Case No.: 24-13467

## <u>CERTIFICATE OF FILING AND SERVICE</u>

WE HEREBY CERTIFY that on this <u>31st</u> day of March, 2025, we electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will serve a copy of the foregoing to **Mark Jay Berkowitz**, Mark J. Berkowitz, PA, 110 SE 6th Street, Suite 1700, Fort Lauderdale, FL 33301, *Counsel for Appellant*; and that an original and four true and accurate copies of the foregoing were served via FedEx Next Business Day Delivery upon David J. Smith, Clerk, United States Court of Appeals for the Eleventh Circuit, 56 Forsyth St., N.W., Atlanta, GA 30303.

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Appellee, Arhaus, LLC*
Scott & Kissane Building, Ste. 1400
9150 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 350-5368
Facsimile: (305) 373-2294
E-mail:  lissette.gonzalez@csklegal.com
E-mail:  emily.fernandez@csklegal.com

By:  */s/ Lissette Gonzalez*
       LISSETTE GONZALEZ
       FBN: 99779