# IN THE ELEVENTH CIRCUIT COURT OF APPEAL

## CASE NO. 24-13467-AA

**SPENCER BUENO,**
        **Appellant,**

**vs.**

**AIRHAUS, LLC,**
        **Respondent.**

_____/

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF FLORIDA, CASE NO. 23-CV-81290-RLR.

---

## APPELLANT'S REPLY BRIEF

---

Mark J. Berkowitz, P.A.
Attorney for Appellant
One Ten Tower
110 SE 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
Email:
labor@markjberkowitz.com
Fla. Bar No. 369391

## <u>APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND COPORATE DISCLOSURE STATEMENT</u>

| | |
|---|---|
| Arhaus, LLC | Appellee |
| Lissette Gonzalez | Appellee's Appellate Counsel |
| Mark J. Berkowitz | Appellant's Attorney |
| Mark J. Berkowitz, P.A. | Appellant's Law Firm |
| Spencer Bueno | Appellant |
| Cole, Scott & Kissane, P.A. | Appellee's Law Firm |
| Matthew Green | Appellee's Trial Counsel |

# TABLE OF CONTENTS

                                                                          Page

Certificate of Interested Persons and Corporate Disclosure     -i-
Statement

Table of Citations                                             -iii-

Argument                                                       1

The Evidence on the "Regarded As" Prong, Was Sufficient
To Get to the Finder of Fact for a Liability Determination,
And to defeat Summary Judgment.

Conclusion                                                     9

Certificate of Compliance                                      10

Certificate of Service                                         11

## TABLE OF CITATIONS

Page

*Dean* v. *Pocono Medical Center*, 142 F.3d 138 (3d Cir. 1988).     6

*Dipol* v. *New York City Transit Authority*,
999 F.Supp. 309 (E.D. N.Y. 1988).     7

*Johnson* v. *American Chamber of Commerce Publishers, Inc.*,
108 F.3d 818 (7th Cir. 1997)     7

*Mantolete* v. *Bolger,* 767 F.2d 1416 (9th Cir. 1985).     5

*Meidling* v. *Walgreens Co.,*
2015 U.S. Dist. LEXIS 183842 (M.D. Fla. 2015).     9

*Menefee* v. *Action Res., LLC,*
2020 U.S. Dist. LEXIS 233884 (N.D. Ala. 2020).     8

*Mendez* v. *Gearan*, 956 F.Supp. 1520, (N.D. Cal. 1997).     7

*Riemer* v. *Illinois Department of Transportation*,
148 F.3d 800 (7thCir. 1998)     6

*Snead* v. *Fla. Agric. & Mech. Univ. Bd. of Trustees,*
724 F.App.'x. 842, 847 (11th Cir. 2018)     8

*Wilson* v. *Sec'y. of Veterans Affairs*,
2022 U.S. App. LEXIS 15303 (11th Cir. 2022).     8

Other Authorities

42 U.S.C. Section 12112 (b)(5)(A)     8

## ARGUMENT

I.  ## THE EVIDENCE ON THE "REAGARDED AS" PRONG, WAS SUFFICIENT TO GET TO THE FINDER OF FACT FOR A LIABILITY DETERMINATION, AND TO DEFEAT SUMMARY JUDGMENT.

The Appellee's Answer Brief completely misses the mark, by substantially citing, to additional legal theories, pursuant to the Americans with Disabilities Act, and the 2009 amendments, thereto, separate, and apart from the pertinent *perception of disability theory*. The proffered additional legal theories, as set forth by Appellee, are not applicable to the relevant facts at issue here; or upon the facts, which the district court considered in its decision, below.

According to the analysis of the district court, the Appellee could still be liable, under a *perception* of disability theory, pursuant to the Americans with Disabilities Act ("ADA"), if an adverse action was taken, namely, the termination, based on a *perception* of a disability, by ARHAUS management. **[R. 3].** As we will see in the legal discussion below, that perception can even be made on a mistaken basis, to attach liability, The district court concluded that BUENO's February 2, 2022, doctor's note, could have raised a genuine

1

dispute of material fact, on whether the Appellee, had *perceived* the Appellant, as being disabled. **[R. 3].** However, the case actually turns on whether or not the request for a leave was "reasonable," under the all of the circumstances, and whether this question of the reasonableness of the leave request, is to determined by the Court, or whether that determination is properly left to the jury's determination, as the finder of fact.

The Record does indeed demonstrate that management "*perceived*" the Appellant as having a disability. For example, a critical management representative of the Appellee, the Sales Manager, Vera Cohen ("COHEN"), *perceived* the Appellant, as having a disability, since COHEN told him, at one point, that, he "could not handle the stress of the job." **[R. 2].** Moreover, on February 10, 2022, ARHAUS had given instructions to BUENO, on how to apply for short-term disability leave benefits; indicating that management "perceived," the Appellant as having a disability, since management representatives had encouraged him to apply for possibly applicable disability benefits, however, the Appellant had not applied for short-term disability benefits, during the period of his leave of absence, from employment, with the Appellee. **[R. 3].**

2

It is also instructive to point out that, based on the factual representations, contained, in the Appellee's Answer Brief, there are indeed disputed facts, regarding the sequence of events, which occurred, after January 30, 2022, and up until February 21, 2022. the date of the onset of the Appellant's cluster headache. **[R. 2].** The Appellant maintains that he was not generally unavailable, or incommunicative, with the Appellee, between January 30, 2022 and February 21, 2022. Management's representations on the Appellant's whereabouts, during this critical time frame, were inherently contradictory. On the one hand, McKENNA testified that he anticipated that BUENO would return to work; by February 21, 2022, and that, therefore, the Appellant had been placed on the work schedule, as of that date. **[R. 4].**

On the other hand, McKENNA sent an email message to Kim Rauen ("RAUEN"), the Appellee's Regional Manager, on February 19, 2022, prior to the Appellant's anticipated return to work date, on February 21, 2022, stating that BUENO should be terminated, from his employment with ARHAUS. **[R. 4].** Furthermore, McKENNA had confirmed that BUENO's termination, from employment, with other ARHAUS management officials, prior to February 21, 2022, the previously agreed upon return-to-work date. **[R. 4].**

3

Moreover, contrary to the Appellee's representations, in its Answer Brief, BUENO had sent a text message to McKENNA, on January 30, 2022, at 12:00 p.m., stating that he had a cluster headache; and/or that he was experiencing a panic attack, and that, as a result, he needed to return home. **[R. 2].** BUENO continued to work from home, on January 30, 2022. **[R. 2].** Furthermore, on January 31, 2022, the Appellant was not scheduled for work. **[R. 2].**

On February 1, 2022, the Appellant sent a doctor's note to McKENNA, indicating that it was medically necessary for him, to be absent from work, from January 30, 2022, to February 21, 2022,[1] and that he could return to work, in the words of the note, "as long as he is feeling better." **[R. 2].** Although the Appellant had intended to return to work, on February 21, 2022. **[R. 2];** ARHAUS management terminated his employment by text message, through the "what's app." application, on the same day, February 21, 2022. **[R. 2].**

Irrespective of what communications had in fact occurred, between the parties, during the critical period from January 31, 2022, to February 22.

---

4

2022, the critical issue in the district court's analysis, was that the request for leave was inherently unreasonable, since there was no definiteness in time, for the Appellant's return date to work; and hence, the district court concluded that the request for leave, was too open-ended, to be enforceable under the statute. [**R. 3**].

In short, according to the analysis of the district court, the request for leave was too indefinite to be enforceable. [**R. 3**]. However, according to both sides, the Appellant's anticipated return to work was indeed, February 21, 2022. [**R. 2**].

The avowed and intentional purpose of the anti-discrimination statutes, including those statutes aimed at eradicating discrimination, based on a disability, is to eliminate stereotypes often present in the workplace about workers with disabilities. *See, Mantolete* v. *Bolger,* 767 F.2d 1416, 1422 (9th Cir. 1985) [finding that Congress' intent in enacting the anti-discrimination disability statutes, was "to prevent employers from refusing to give much needed opportunities to handicapped individuals on the basis of misinformed stereotypes."] Management exhibited such prohibited and unlawful stereotypical thinking in this case, by claiming that BUENO was "incapable

5

of handling a stressful job;" and by or encouraging him to take disability leave. [**R. 2, 3**]; even though both parties had previously agreed that BUENO would return to work, after less than a thirty-day period of leave, on February 21, 2022.

Moreover, a "regarded as" plaintiff can make out a case of disability discrimination, even if the employer is innocently wrong, about the extent of the employee's impairment.

Although the legislative history indicates that Congress was concerned about eliminating society's myths, fears, stereotypes and prejudices with respect to the disabled, the EEOC's Regulations and Interpretative Guidelines make clear that even an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability. Thus, whether or not [the defendant] was motivated by myth, fear, or prejudice is not determinative of [the plaintiff's] "regarded as" claim. [2]

It is also important to point out, for example, in *Riemer* v. *Illinois Department of Transportation*, 148 F.3d 800 (7thCir. 1998), where the court sustained a "regarded as" claim, where the employer's misperception about the effects of the plaintiff's asthma, based on a doctor's report, led to exclude

---

[2] *See, Dean* v. *Pocono Medical Center*, 142 F.3d 138, 144 (3d Cir. 1988)

the plaintiff from a class of jobs; *see also, Johnson* v. *American Chamber of Commerce Publishers, Inc.*, 108 F.3d 818 (7th Cir. 1997), the court opined, "if for no reason whatsoever an employer regards a person as disabled—if, for example, because of a blunder in reading medical records, it imputes to him a heart condition he never records, it imputes to him a heart condition he never had an takes an adverse action, it has violated the statute.. ." *Id*, at 819; *in accord, Dipol* v. *New York City Transit Authority*, 999 F.Supp. 309 (E.D. N.Y. 1988) [the fact that the employer, after receiving information from a doctor, immediately placed the plaintiff on a no work status, made out a "regarded as" claim], *see also, Mendez* v. *Gearan*, 956 F.Supp. 1520, 1525 (N.D. Cal. 1997) [employer's mistaken perception that a temporary impairment was permanent could be found to properly constitute a "regarded as" claim.] Implicit in the Appellee's decision to terminate BUENO's employment, prior to the expiration of the period of absence, previously agreed upon by the parties, suggests that management indeed viewed the Appellant as "damaged goods," an outcast, who, in the employer's view, had to be terminated, prior to February 21, 2022, even though the Appellant had every intention of reporting back to work on that date. **[R. 2].**

The Americans with Disabilities Act provides that an employer indeed unlawfully discriminates against a qualified individual with a disability, when the employer fails to make "reasonable accommodations," for the employee, unless the accommodation, would impose an undue hardship," on the employer. 42 U.S.C. Section 12112 (b)(5)(A); *see also*, *Wilson* v. *Sec'y. of Veterans Affairs*, 2022 U.S. App. LEXIS 15303 (11th Cir. 2022).

It has been held in the Eleventh Circuit, for example, that the reasonableness of an accommodation request is traditionally a question of fact for the jury to determine. *See, Snead* v. *Fla. Agric. & Mech. Univ. Bd. of Trustees,* 724 F.App.'x. 842, 847 (11th Cir. 2018) [concluding that the district court did not err in denying judgment as a matter, because, among other things, a reasonable jury could have determined that the requested ADA accommodation was reasonable]; *see also*, *Menefee* v. *Action Res., LLC,* 2020 U.S. Dist. LEXIS 233884 (N.D. Ala. 2020) [denying summary judgment because, among, other things, a reasonable juror could decide that the plaintiff's requested accommodation was reasonable. As such, the district court committed reversible error, here, by granting summary judgment; the Appellant had indeed established a *prima facie* case of disability

8

discrimination under the ADA, based on a perception of a disability, mandating reversal of the district court's decision, granting of summary judgment in favor of the employer below.[3]

## II.    <u>CONCLUSION</u>

In this case, the district court overstepped its proper legal authority, in the granting of summary judgment, for the Appellee. In its analysis below, the district court's determination was not in proper compliance with Eleventh Circuit precedent.

In short, the district court clearly committed reversible error, by usurping the legal province of the jury, in the granting summary judgment, on the ultimate question of the reasonableness of the requested accommodation. Applicable verdict forms in the Eleventh Circuit frame the question to the jury, as to whether or not the proffered accommodation was reasonable. This ultimate determination: and or this essential question, must

---

[3] The verdict form has a determination for the jury, as to whether or not the plaintiff had been provided with a reasonable accommodation. *See*, *Meidling* v. *Walgreens Co.,* 2015 U.S. Dist. LEXIS 183842 (M.D. Fla. 2015).

be left to the trier of fact under the Eleventh Circuit precedent; and therefore, this case must be reversed and remanded for trial.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Appellant
One Ten Tower
110 SE 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391


/s/ Mark J. Berkowitz
Mark J. Berkowitz

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in Appellant's Initial Brief is 1,904 words.

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing was sent by the Court's electronic filing system, CM/ECF, on this 6th day of May, 2025, to Lissette Gonzalez, Cole, Scott & Kissane, P.A., Attorneys for the Appellee, 110 SE 6th Street, Suite 2700, Ft. Lauderdale, Florida 33301.

/s/ Mark J. Berkowitz
Mark J. Berkowitz